JAMES A. VENDETTUOLI *et al. vs.* MAX GORDON *et al.*

JUNE 1, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This cause was begun by a bill of complaint of James A. Vendettuoli of the city of Providence and Joseph Blain of Boston, Massachusetts, against Max Gordon and his brother Louis, as partners, and their sister Bessie Deutscher. The relief sought was to compel specific performance of an alleged agreement by Max Gordon with the complainant Vendettuoli to act as agent for the latter in the purchase of a certain mortgage which was on residential property in the city of Providence, standing in the name of the complainant Blain.

The cause was heard in the superior court on bill, answer and evidence; and a decision was rendered for the respondents. Thereon a decree for them was entered, dismissing the bill of complaint; and the cause is now before us on the complainants' appeal, based on the grounds that the decision was against the law and against the evidence and the weight thereof and that the decree was erroneous and failed to do substantial justice between the parties.

According to uncontradicted evidence, the property involved had belonged to the wife of the complainant Vendettuoli and the title thereto had been conveyed by her, a number of years before the bill was brought, to the complainant Blain, who had a second mortgage on it; and there was then an agreement by him as to the return of the property. He took no part in the hearing of the cause. She and her husband managed the property, and with their two daughters lived in one of the three apartments of the house.

The property was subject to a $4500 mortgage made by a former owner to the Proprietors of Swan Point Cemetery, a corporation which will hereinafter be referred to as the mortgagee. At the time of the events directly involved in the cause that corporation still held the mortgage and the note thereby secured, both being hereinafter referred to as the mortgage. No payment had been made on the princi-

pal; and the interest thereon and the taxes on the property were considerably in arrears. Therefore the mortgagee wished to sell the mortgage, even at a considerable discount, and notified the complainants of its desire to dispose of it.

In the bill of complaint the most vital allegations, on which the right to the relief prayed for must depend and which were denied by the respondents in their answer, were, in substance and effect, as follows: It was alleged that the complainant Vendettuoli, acting as representative of the other complainant, dealt with the mortgagee, in seeking to take over and replace the mortgage, for the benefit of the complainant Blain; that negotiations with the mortgagee were pending, when the respondent Max Gordon, representing also his brother Louis, sought out the complainant Vendettuoli, suggesting that he, Max Gordon, could consummate an agreement with the mortgagee to buy the mortgage for $4000, and sought authority to act as broker for the complainants, "in the consummation of such a deal."

Other allegations were that such authority was given by Vendettuoli to the Gordon brothers, they to receive for the work a "regular brokerage fee"; that, in reliance on the agreement so made, Vendettuoli awaited the action taken in behalf of the complainants by the respondents Gordon; that a few days later, on or about August 30, 1941, the complainants were informed that the respondent Max Gordon and the firm of Gordon and Gordon, taking advantage of the authority placed in them by the complainants, had negotiated with the mortgagee and purchased the mortgage and caused a transfer thereof to be made to the respondent Bessie Deutscher.

The rest of these allegations were that the complainants thereupon requested the respondents to carry out the agreement made as above stated and "to hold the mortgage subject to transfer to the complainants' designee" for the sum of $4000 and the brokerage agreed upon; but that the respondents refused to transfer the mortgage unless paid for

it $5359; that the complainants are ready to take it over for the sum agreed upon but that the respondents refused to transfer it upon such terms and were threatening to foreclose it, unless paid the amount demanded by them.

The respondents in their answer, besides denying these allegations by the complainants, in effect alleged that, at some time prior to August 30, 1941, one Henry Coleman, claiming to represent the mortgagee, negotiated with Max Gordon to induce him to purchase the mortgage; that the latter dealt with Henry Coleman and George Ormiston, agents of the mortgagee, and bought the mortgage for the respondent Bessie Deutscher "in the usual course of business without any knowledge of the wishes, designs or intentions of either of said complainants."

At the hearing of the cause upon its merits it was shown by undisputed evidence that about the first of August 1941 the mortgagee, being desirous of selling the mortgage, authorized the above-mentioned Henry Coleman to act as broker in finding a purchaser; and that he, taking the respondent Louis Gordon with him, went to the mortgaged property on August 11, 1941, and they were shown by the complainant Vendettuoli's wife through their apartment on the first floor, the husband not being present. She testified that one of them told her that he was from the cemetery corporation, but the mortgage was not mentioned.

According to her husband's testimony he soon afterwards went to the mortgagee's office and talked with a Mr. Harbach, one of its officers, and made an offer of $4000 for the mortgage and was told that the offer had to be passed upon by the investment committee. He also, a little later, talked with a Mr. Ormiston, a clerk in the office of the mortgagee, who told him that this committee had to act on the matter; that he would be given the first preference as to that offer and that he should come back on the 26th, after the committee meeting which would be held on that day. But he did not go back for several days.

He explained this failure on his part and supported the most vital allegations of the bill of complaint by his own testimony. He testified that on August 26, 1941, after he had talked with Mr. Ormiston about buying the mortgage and had made an offer for it, the respondent Max Gordon came to this complainant's home and persuaded him to let Gordon handle the matter for him and to keep away from the mortgagee.

This complainant then testified as follows: "I told him that I was down there and I had first preference after the meeting to take up this mortgage; that I offered them four thousand dollars, which I thought I could get the mortgage for that amount or less. But he says, 'Now, you keep away from them and I can save you some money. And I will charge you regular brokerage commission.' Well, he told me so much about what he could do and what he couldn't do—he had plenty of money—and I advised him to go ahead and I kept away from the office of the Swan Point to give him an opening to take up that mortgage. Which he did in some other party's name. . . . He told me he had a lot of influence and could take up that mortgage and save me a good many dollars."

He testified also that Gordon offered to lend him the money with which to buy the mortgage but that, after the mortgage had been transferred by the mortgagee to Mrs. Deutscher for $3500, Gordon refused to have her transfer it to this complainant for less than $5350.

The testimony of this complainant, as to his interview at his home with Max Gordon, was in the main supported by that of the former's wife, who said that she was sitting at the time in an adjoining room and was not paying much attention to the conversation. It was also in general supported by the testimony of a daughter of theirs, who testified that she was studying in another adjoining room and heard considerable of the conversation between her father and Max Gordon.

On the other hand, both Max and Louis Gordon testified that they went to the house together, on the afternoon of August 26, simply to look at the property, as Max had not seen it; that they stayed there only about eight minutes; and that there was no talk of an agreement between Max Gordon and James A. Vendettuoli about the former buying the mortgage for the latter. Max Gordon also testified that he never agreed to act as agent for Vendettuoli; that he was not a real estate broker, but that he simply took care of the property that was owned by himself and his mother and sister.

According to Ormiston's testimony Vendettuoli came in and talked with him on August 25 and asked if the mortgagee would sell the mortgage to him and, if so, for what amount, but made no offer himself. Ormiston told him that the committee would meet the next afternoon and would fix a price for the mortgage and that he should come in, right after the committee meeting, to learn what figure had been fixed. But Vendettuoli did not come in again for some days afterwards, and in the meantime the committee had rejected an offer by Max Gordon of $2800 and had fixed a price of $4000. Later, before Vendettuoli came in again, Max Gordon had raised his offer to $3500 and it had been accepted and the sale of the mortgage had been consummated by a transfer to the respondent Bessie Deutscher. This testimony by Ormiston, as to the negotiations between the mortgagee and Max Gordon for the sale, and as to the sale and transfer of the mortgage, was confirmed by the testimony of the latter and of Henry Coleman, who had acted as broker for the mortgagee in the transaction.

At the conclusion of the hearing, the trial justice delivered orally from the bench a decision, in which he discussed the evidence to some extent and concluded as follows: "The complainants have wholly failed to satisfy me by a fair preponderance of the evidence of the material allegations of the bill of complaint." He concluded that the bill should

be denied and dismissed. Later a final decree was entered that the bill of complaint be and it was thereby denied and dismissed, and the injunction theretofore entered in the cause was dissolved.

A consideration of all the evidence and of the entire record in this cause does not, in our judgment, warrant us in finding that the trial justice, who had heard all the testimony except that of one witness, a written statement of whose testimony at a preliminary hearing in this cause had been agreed to by the parties and filed in evidence, was clearly not justified in reaching the conclusions of fact which he stated in his decision and which support the decree appealed from. Therefore we cannot properly hold that the decree should be reversed.

The appeal of the complainants is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Frank H. Wildes,* for complainants.

*Philip S. Knauer,* for respondents.